﻿Citation Nr: AXXXXXXXX
Decision Date: 10/30/19 Archive Date: 10/30/19

DOCKET NO. 190418-9546
DATE: October 30, 2019

ORDER

Service connection for right shoulder condition is granted.

Entitlement to a disability rating in excess of 10 percent for degenerative disc disease of the cervical spine with osteoporosis is denied.

Entitlement to a total disability rating based on individual unemployability is denied.

FINDINGS OF FACT

1. A right shoulder disability is related to the Veteran’s service-connected degenerative disc disease of the cervical spine with osteoporosis.

2. The Veteran’s combined range of motion for the cervical spine is greater than 170 degrees, flexion is greater than 30 degrees and there are not muscle spasms severe enough to result in abnormal gait or abnormal spine contour. 

3. The Veteran does not meet the schedular requirements for TDIU and he is not shown to be otherwise unemployable due to service-connected disabilities alone.

CONCLUSIONS OF LAW

1. The criteria for service connection for right shoulder condition have been met. 38 U.S.C. § 1131; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2019).

2. The criteria for a rating in excess of 10 percent for a cervical spine disability have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5201 (2019).

3. The criteria for an award of TDIU are not met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from July 1982 to March 1989.

These matters are before the Board of Veterans' Appeals (Board) on appeal from an April 2019 rating decision that considered the evidence of record on that date. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA's decision on their claim to seek review. The Board notes that the rating decision on appeal was issued in April 2019, in that same month, the Veteran elected the modernized review system for his cervical spine and right shoulder issues. 38 C.F.R. § 19.2(d).

Under Rice v. Shinseki the Board has jurisdiction over a TDIU claim as part and parcel of the Veteran's increased rating claim. Rice v. Shinseki, 22 Vet. App. 447 (2009) (holding that a request for TDIU, whether expressly raised by the Veteran or reasonably raised by the record, is not a separate "claim" for benefits, but rather, is part of a claim for increased compensation). This issue has been separately characterized in the issues above in accordance with that decision.

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was provided and neither the Veteran, nor his representative, has either alleged or demonstrated any prejudice with regard to the content or timing of VA's notices. Of note, in an April 2019 correspondence, the Veteran appears to indicate that his examinations were inadequate. However, while the Veteran notes that the examinations were brief, he points to no specific insufficiency in the examinations and on review the examinations are found to be based on a review of the claims file and an examination of the Veteran, addressed all relevant contentions in sufficient detail and that conclusions were supported by the evidence presented. As such, the Board find it may proceed, VA having met its duty to notify and assist, and adjudication of the claims at this time is warranted.

Service connection for right shoulder condition is granted.

The Veteran contends that he has a right shoulder disability which is related to an injury in service, alternatively he asserts that a right shoulder disability is related to his service-connected cervical spine disability.

The Veteran’s service treatment records include a January 1988 treatment note which notes a car accident in April 1987. The Veteran is shown to have complained of numbness in the right shoulder. It was noted that the Veteran should have a neurology consult. A January 1988 treatment note from the neurology clinic stated that at the time of the Veteran’s accident a “suspicious C3” vertebral body fracture was considered but discarded by the orthopedic surgeon. The Veteran reported that in December 1987 he had numbness and a tingling sensation in the right upper extremity for about twenty minutes. It was noted that muscle stretch reflexes were slightly more active on the left side of the body. The impression was rule out left cervical myelopathy, it was noted this was unlikely but fit with findings of hyperactive reflexes and numbness on the right.

A May 1988 treatment note reported that the Veteran did not have the scheduled tests because he was away, however complaints did not include right shoulder pain, the Veteran reported pain in the low back and numbness of the right foot. It was noted that the Veteran was suspected to have had a traumatic cervical myelopathy. The Veteran’s service treatment records include an August 1988 profile for residuals of a back injury, the Veteran’s right shoulder is not mentioned.

A February 2012 VA examination of the cervical spine includes no right shoulder complaints and the Veteran was found to have no neurological symptoms associated with a cervical spine disability.

The Veteran’s treatment notes are also silent as to a right shoulder condition prior to August 2018 wherein the Veteran is shown to have gone to the emergency room with complaints of radiating neck pain. The Veteran stated that turning his neck caused pain in the shoulder area. A diagnosis of cervicalgia from degenerative joint disease and cervical radiculopathy were noted. The Veteran was advised that degenerative joint disease of the neck would continue to cause problems from time to time. The Veteran was prescribed a Medrol dose pack, analgesic cream and a muscle relaxant. The Veteran is shown to have received treatment for shoulder and neck pain thereafter.

In a November 2018 examination of the cervical spine, sensory examination of the right shoulder area was found to be normal, radiculopathy was not noted.

A VA examination dated in December 2018 for shoulder and arm conditions included findings of shoulder strain and rotator cuff tendonitis. The examiner stated that the Veteran had complaints of and erroneously stated that he was service-connected for upper extremity radiculopathy, but that consideration of such was outside of the examination request. Despite this, the examiner noted the Veteran’s history of service connection for neck and right radicular pain that radiated down to his elbow, the Veteran reported problems in his shoulder and upper arm which he reported worsened over time. It was noted that a January 2019 right shoulder x-ray demonstrated no acute bony abnormality. The examiner noted that the Veteran had significant radiculopathy of the right upper extremity that caused and exacerbated pain and weakness in the right shoulder. The examiner found that the Veteran had right arm muscle atrophy and that right sided radiculopathy, strain and tendonitis contributed to such atrophy. 

In an addendum medical opinion, following a VA examination, the VA examiner opined that the Veteran’s right shoulder disability was not directly related to service. The examiner explained that it was less likely than not that a right shoulder condition was related to service because an April 1987 motor vehicle accident showed a direct trauma to the right shoulder and that a related profile did not involve the shoulders. It was noted that a neurology note date in May 1988 noted mechanical low back pain but no note of right upper extremity numbness and that a neurology consult in January 1988 ruled out left cervical myelopathy. 

The examiner also found, however, that the Veteran’s right shoulder disability was related to his cervical spine degenerative arthritis with right upper extremity radiculopathy. It was noted that the Veteran had abnormal enervation of the right upper extremity musculoskeletal system which weakened the shoulder complex leading to damage in the rotator cuff and putting significant strain on the complex. It was noted that while the Veteran’s right shoulder strain and rotator cuff tendonitis were not directly due to his complaints during service, they were both more likely than not secondary to his cervical spine degenerative joint disease and right upper extremity arthritis. 

The Board finds that the evidence supports service connection on a secondary basis. The evidence does not demonstrate that the Veteran’s present shoulder disability is based on an in-service injury as the Veteran’s shoulder symptoms appear to have resolved during service and the Veteran is not shown to report shoulder symptoms for decades after. This finding is supported by the findings of the VA examiner. The evidence does support, however, a finding that the Veteran has a right shoulder disability which is due to the Veteran’s service-connected degenerative disc disease of the cervical spine with osteoporosis. 

While the Board notes that VA examiner erroneously concluded that the Veteran was already service connected for radiculopathy, considering the totality of his conclusions, the preponderance of the evidence still supports a conclusion that the Veteran has radiculopathy which is related to a cervical spine condition and additional right shoulder disabilities are related to such. Accordingly, after resolving all doubt in favor of the Veteran, the Board finds that service connection for a right shoulder disability is warranted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. Given this decision, the Agency of Original Jurisdiction has the task of determining the severity of, and level of disability rating for, the Veteran’s right shoulder disability.

Entitlement to an Increased Rating for a Cervical Spine Disability

The Veteran’s cervical spine disability is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5237. Under the General Rating Formula for Diseases and Injuries of the Spine, a 10 percent rating is warranted for forward flexion of the cervical spine greater than 30 degrees but not greater than 40 degrees; or, combined range of motion of the cervical spine greater than 170 degrees but not greater than 335 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is warranted for forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 30 percent rating is warranted for forward flexion of the cervical spine to 15 degrees or less; or favorable ankylosis of the entire cervical spine. A 40 percent rating is warranted for unfavorable ankylosis of the entire cervical spine. A 100 percent rating is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine. 

Any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, are to be evaluated separately under an appropriate diagnostic code. Id. at Note 1.

When evaluating musculoskeletal disabilities based on limitation of motion, 38 C.F.R. § 4.40 requires consideration of functional loss caused by pain or other factors listed in that section that could occur during flare-ups or after repeated use and, therefore, not be reflected on range-of-motion testing. 38 C.F.R. § 4.45 requires consideration also be given to less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement. See DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a; a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. See Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) (“[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran’s disability, after which a rating is determined based on the § 4.71a criteria.”).

Under 38 C.F.R. § 4.59, painful motion is a factor to be considered with any form of arthritis; however, 38 C.F.R. § 4.59 is not limited to disabilities involving arthritis. See Burton v. Shinseki, 25 Vet. App. 1 (2011).

In Correia v. McDonald, 28 Vet. App. 158 (2016), the Court held that the final sentence of 38 C.F.R. § 4.59 requires that the examiner record the results of range of motion testing “for pain on both active and passive motion [and] in weight-bearing and non-weight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint.” The spine has no opposite joint.

Here, the Veteran’s November 2018 VA examiner found no objective evidence of pain on non-weight bearing and that the Veteran had the same active range of motion as passive range of motion.

In Sharp v. Shulkin, 29 Vet. App. 26 (2017), the Court held that VA examiners must obtain information about the severity, frequency, duration, precipitating and alleviating factors, and extent of functional impairment of flares from the veterans themselves, when a flare-up is not observable at the time of examination. The November 2018 VA examination demonstrates that the Veteran did not report flare-ups of the cervical spine.

In a November 2018 VA examination range of motion testing revealed forward flexion to 45 degrees and extension to 0 degrees. Combined range of motion was 340 degrees. The examiner stated that no pain was noted on examination and there was no objective evidence of localized tenderness or pain on palpitation of the joint or associated soft tissue of the cervical spine. There was no evidence of pain with weight bearing nor was there additional loss of function or range of motion after repetitive testing. The Veteran reported that after repetitive use over time the loss of range of motion was dependent on how strenuously the joint was used. He stated that at its worst he could not move his neck at all due to pain, fatigue, weakness and lack of endurance but that there were times when the range of motion loss was minimal. The Veteran was not found to have muscle spasms which resulted in abnormal gait or abnormal spine contour. Muscle strength and sensory examination were normal. The Veteran was not found on examination to have radicular pain or other signs or symptoms of radiculopathy (however, the Board notes the Veteran’s shoulder examination and has granted service connection for a right shoulder disability, that examination demonstrated a normal left shoulder). There was no ankylosis of the spine or other neurologic abnormalities. Intervertebral disc syndrome of the cervical spine was not demonstrated. 

The Board finds that the preponderance of the evidence is against a rating in excess of 10 percent for a cervical spine disability. The Board acknowledges the Veteran’s lay reports of symptoms and that there was functional loss due to pain, weakened movement, excess fatigability, incoordination, repetitive use, pain during flare-ups, and pain during repetitive use over time, etc. However, even considering the Veteran’s lay reports of symptoms and noted functional loss, the degree of additional limitation reflected by the statements that would not result in limitation of motion more nearly approximating forward flexion of 15 degrees but not greater than 30 degrees or the combined range of motion of the cervical spine not greater than 170 degrees. Additionally, the Veteran did not have muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

On examination, the Veteran stated that he could not move or turn for a long time due to neck pain. The Veteran additionally reported that after repetitive use over time his loss of range of motion varied depending on how strenuously the joint was used. He stated that at his worst he could not move it at all due to pain, fatigue, weakness, and lack of endurance but at other times range of motion loss was minimal. The Board has considered this evidence alongside the Veteran’s treatment records which demonstrate complaints of neck pain to include a visit to the emergency room in August 2018 in which the Veteran stated that he had 10 out of 10 pain and that his neck caused him pain and pain in the shoulder area. The treating physician described the Veteran’s neck as “supple with some soreness in the right soft tissue cervical area with pain on turning.” 

Having considered the objective medical evidence and the Veteran’s contentions, the Board finds that a disability rating in excess of 10 percent is not warranted. Of note, the Veteran’s range of motion testing is normal, and above the flexion greater than 30 degrees but not greater than 40 degrees described in the criteria for a 10 percent disability rating. Considering, however, the Veteran’s descriptions of pain and functional limitations due to pain, the Board finds a 10 percent rating, but no higher, is still appropriate.

Consideration has also been given to assigning a rating under the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes. However, the Veteran does not have IVDS and the evidence of record is against a finding that the Veteran was ever prescribed bed rest by a physician for a duration that meets the criteria for a higher rating. See 38 C.F.R. § 4.71a, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. 

For the foregoing reasons, the preponderance of the evidence is against the Veteran’s claim for a rating in excess of 10 percent for a degenerative disc disease of the cervical spine with osteoporosis. 

Entitlement to a Total Disability Rating Based on Individual Unemployability

The Veteran contends that his service-connected disabilities render him unable to obtain and maintain substantially gainful employment. Total disability ratings for compensation may be assigned where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities: Provided, that if there is only one such disability, this disability shall be ratable as 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16.

Consideration may be given to the Veteran's level of education, special training, and previous work experience in arriving at a conclusion, but not to his age, or to the impairment caused by non-service-connected disabilities. Id. In reaching such a determination, the central inquiry is "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Additional considerations are noting that for a TDIU, marginal employment is not to be considered substantially gainful employment. 38 C.F.R. § 4.17.

As the record stands now, the Veteran is service connected for three disabilities, namely lumbar strain, evaluated as 20 percent disabling, degenerative disc disease of the cervical spine, evaluated as 10 percent disabling, and healed calcaneus disorder fracture of the right foot, rated as 10 percent disabling. In the analysis above, service connection was granted for a right shoulder disorder, which is not currently assigned a disability rating. As the Veteran has requested Direct Review, the Board must consider the evidence of record at the time of the request. The Veteran’s total combined disability rating is 40 percent. Thus, the Veteran's combined 40 percent evaluation does not meet the schedular criteria at this time.

Nevertheless, a Veteran may be entitled to a TDIU if it is established that he is unable to secure or follow substantially gainful employment as a result of the effects of the service-connected disabilities. 38 C.F.R. § 4.16 (b). Therefore, the Board must determine whether the Veteran's service-connected disabilities preclude him from engaging in substantially gainful employment, or work that is more than marginal, which permits the individual to earn a living wage. Moore v. Derwinski, 1 Vet. App. 356 (1991). 

The fact that a Veteran may be unemployed or has difficulty obtaining employment is not determinative. The ultimate question is whether the Veteran, because of service-connected disabilities, is incapable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. A disability rating in itself is recognition that the impairment makes it difficult to obtain or keep employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993). An inability to work due to advancing age may not be considered. 38 C.F.R. §§ 3.341 (a), 4.19. In making the determination, VA considers such factors as the extent of the service-connected disability, and employment and educational background. 38 C.F.R. §§ 3.340, 3.341, 4.16(b), 4.19.

In considering whether TDIU is warranted, the Board has also considered the Veteran's statements that his service-connected disabilities made him unemployable. In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. (1994); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67 (1997); Layno v. Brown, 6 Vet. App. 465 (1994); Cartright v. Derwinski, 2 Vet. App. 24 (1991) (although interest may affect the credibility of testimony, it does not affect competency to testify). The Veteran is competent to report symptoms because that requires only personal knowledge as it comes to him through his senses. Layno v. Brown, 6 Vet. App. 465 (1994). However, he is not competent to identify to the extent to which service-connected disabilities make him unemployable according to the pertinent VA regulations. Those determinations require training, which the Veteran is not shown to have. 

Here, the preponderance of the evidence is against a finding that the Veteran has been unable to secure or follow a substantially gainful occupation as a result of the service-connected disabilities. The evidence of record demonstrates that the Veteran may be able to engage in substantially gainful employment and, if not, that he is rendered unemployable due to a combination of service-connected and non-service-connected disabilities rather than service-connected disabilities alone.

In finding that the Veteran is not rendered unemployable by his service-connected disabilities, the Board points to the findings of the Social Security Administration (SSA) which found that the Veteran was not unemployable. The VA is not bound by the findings of the Social Security Administration but finds that the medical evidence relied upon for its conclusion probative. 

The SSA determination letter notes that in addition to the service-connected disabilities alleged by the Veteran as causing his inability to maintain employment, medical records revealed PTSD, asthma, polyarthralgia, neuropathy and alcohol and substance abuse. A work history report reveals that the Veteran has worked as a brake press operator, a cement unloader, a janitor, a package sorter and in warehouse labor. The Veteran reported that he completed the 12th grade. He reported that he had job training in medical billing and coding in 2009. 

In support of his SSA disability claim, the Veteran reported severe leg and back pain, he explained that he spent the majority of the day watching television, going on the computer and sleeping. The Veteran described being unable to walk more than one-hundred feet without resting. In contrast, examinations performed in conjunction with the Veteran’s disability claim included a January 2017 finding that a cane was probably not needed for ambulation and that the Veteran could lift and carry about fifty pounds and frequently lift and carry about twenty-five pounds. One examiner stated that the Veteran could stand, walk or sit for about six hours in a workday. A February 2017 behavioral science consultation noted that several records were consistent with an alcohol use disorder and that his history, presentation and symptoms met the criteria for alcohol use disorder, by history. 

March 2017 private emergency treatment records included in the Veteran’s SSA records include the Veteran’s reports of drinking two thirty-two-ounce beers and one pint of gin per day. It was noted that the Veteran denied recreational drug use adamantly but that his urine screen was positive for cocaine, he stated that he was prescribed medication from the VA that contained cocaine but that he was not on that medication any more. 

In an October 2018 report for the Social Security Administration, the Veteran’s VA physician, Dr. H.L. reported that the Veteran could occasionally lift ten pounds with his dominant hand and could rarely lift twenty to fifty pounds, Dr. H.L. stated that the Veteran could sit for four hours in an eight hour work day and stand and walk for two hours and required the option to sit or stand at will. It was noted that the Veteran required a cane to ambulate but could ambulate without his cane for 100 feet. 

Turning to the Veteran’s VA examinations, the Veteran’s November 2018 VA examiner found that the Veteran would have difficulty with prolonged activities like working on a computer, writing or typing and must avoid activities like excessive pushing, pulling, grabbing, grasping and lifting.

The VA examiner who conducted the Veteran’s December 2018 VA examination of the right shoulder also conducted his lumbar spine and right ankle examination in February 2019, the examiner provided identical or nearly identical opinions regarding the Veteran’s employability in those reports. Those reports include the examiner’s findings that the Veteran could not bend down and lift or stand and walk for five or so minutes before having to rest. The examiner noted that the Veteran could not use stairs or ladders and that his pain had increased significantly over the past few years. The examiner stated that with this in mind the Veteran would not be able to perform in a physical setting with very heavy, heavy, medium or light due to his inability to stand without aid, and inability to bend and lift. 

The examiner stated that the Veteran had never had or had training to do a sedentary job and that he could not sit for long periods and would need to get up and move every ten minutes or so. The Veteran’s shoulder, ankle and lumbar spine VA examiner found that the Veteran had no experience in sedentary work and would need to be able to get up and move every ten minutes or so. The examiner stated that the Veteran would suffer significant distraction due to chronic pain which would negatively impact a sedentary job but that a sedentary job was the only option available. The examiner stated that given the conditions listed and others such as PTSD and avoiding contact in public, working from home on the computer would be the only tenable option and that the Veteran did not have the training for such work. 

The Board finds that the evidence does not demonstrate that the Veteran is unable to maintain substantially gainful employment as due to his service-connected disabilities alone. This is supported by the Social Security Administration’s findings that, even considering the Veteran’s service-connected and non- service-connected disabilities, he was able to maintain work, just not as he described it. Further, the Board notes that the evidence in favor of a finding of employability, his own statements in support of his claim and the findings of the VA examiners, are based in great part on the Veteran’s own reporting which the Board affords less probative value given a finding of inconsistent substance abuse reporting and the fact that the Veteran is not shown to have the medical expertise to determine which of his many service-connected and non-service connected disabilities might render him unable to work. Further, the most probative evidence, the finding by the Veteran’s shoulder, ankle and spine examiner, includes findings that fail to note that the Veteran did have some sedentary training, having trained to be a medical coder, and included findings outside of the impairments due to his service-connected disabilities.

Thus, while the evidence presents an unclear picture as to whether the Veteran is unable to work due to all of his disabilities, when weighing the evidence in favor of and against a finding of unemployability due to service-connected disabilities alone, the evidence is against the Veteran’s claim and entitlement to a TDIU must be denied.

 

 

KELLI A. KORDICH

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board G. Slovick, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.